[S. F. No. 10835.  In Bank.—March 19, 1924.]

## E. LARSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[S. F. No. 10836.  In Bank.—March 19, 1924.]

## E. LARSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[S. F. No. 10837.  In Bank.—March 19, 1924.]

## E. LARSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[S. F. No. 10838.  In Bank.—March 19, 1924.]

## E. LARSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—LIABILITY OF EMPLOYER—CAUSAL CONNECTION BETWEEN INJURY AND EMPLOYMENT.—It was not intended by the Workmen's Compensation Act that an employer who comes within its provisions shall be the insurer of his employee at all times during the period of the employment, but is liable for compensation only when the injury occurs to the employee while performing some act for the employer in the course of his employment, or is doing something that is incidental thereto. There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be a causal connection between the employment and the injury which had its origin in a risk connected with the employment, and flowed from that source as a rational and natural consequence.

[2] ID.—RELATION OF INJURY TO BUSINESS—EVIDENCE.—Whether a given accident is so related or incident to the business in which

---

1. Injuries arising out of and in the course of the employment within meaning of Workmen's Compensation Act, in general, notes, Ann. Cas. 1915A, 126; Ann. Cas. 1915C, 779; Ann. Cas. 1916A, 388; Ann. Cas. 1916D, 584, 694; Ann. Cas. 1916E, 166; Ann. Cas. 1917E, 321, 332; Ann. Cas. 1918D, 683; Ann. Cas. 1918E, 813, 1168; L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

the employee is engaged must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case.

[3] ID.—WORKMEN COMPELLED TO LODGE IN BUNKHOUSE — COMPENSABILITY OF INJURIES.—Injuries to workmen, even though received in a bunkhouse situated on the employer's premises, are compensable under the Workmen's Compensation Act, where the workmen were compelled to lodge in the bunkhouse or not work for the employer, and the consideration for their services was not alone wages, but board and the lodging furnished at the bunkhouse were reckoned as a part of their pay, and said bunkhouse was the only place where the men could pass the time while momentarily unemployed.

[4] ID.—TIME OF EMPLOYEE—PLACE OF SLEEPING AND EATING—EVIDENCE.—When the employer places the employee in such circumstances that his time is never his own, where he has no discretion as to where he shall sleep and where he shall eat, under such circumstances the workman must be considered in the employ of the employer all of the time, or at least performing a service which is incidental to the employment he is engaged in.

[5] ID.—MANIPULATION OF TOOLS—RESTRICTION OF RIGHT TO COMPENSATION.—The right to compensation under the Workmen's Compensation Act is by no means restricted to those cases where the injury occurs while the employee is actually presently manipulating the tools of his calling.

[6] ID.—EXPLOSION IN BUNKHOUSE — NATURE OF HAZARD — RELATIONSHIP TO EMPLOYMENT—EVIDENCE.—Where workmen were injured in a bunkhouse provided by the employer, in which they were required to lodge and pass the time while momentarily unemployed, by an explosion caused by a choreman in pouring coal-oil into a stove in the bunkhouse, and it was part of the duty of the choreman to make fires at the bunkhouse, there was a direct causal connection between the injuries received by the men and their employment; and the negligence of the choreman in performing his duty not having been shown to have been either willful or sportive, it must be considered a risk incidental to the employment of himself and the other workmen.

[7] ID.—ANTICIPATION OF INJURIES — EFFECT ON CLAIMS. — The fact that the injuries to such workmen were not of a kind to be anticipated, nor peculiar to the employment in which they were engaged, does not defeat the claims to compensation.

[8] ID.—EVIDENCE—RIGHT OF EMPLOYEE TO BE IN BUNKHOUSE.—In these proceedings to review awards of compensation for injuries

3. Injuries to employee who is resting during working hours as arising out of and in the course of the employment, note, 10 A. L. R. 1488.

received by workmen in a bunkhouse provided by their employer in which they were compelled to lodge and pass their time while momentarily unemployed, the contention that one of the injured workmen had no work to do in the bunkhouse, that he was there only for his own convenience, and was merely "loafing" at a time when he should have been at work in the' fields, is unsupported by the evidence.

[9] ID. — EVIDENCE. — In such proceedings, the contention that two other of such workmen were "stealing from their employer's time" is not well founded.

PROCEEDINGS in Certiorari to annul awards of the Industrial Accident Commission granting compensation for injuries. Awards affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander for Petitioners.

Warren H. Pillsbury for Respondents.

WASTE, J.—Four proceedings in *certiorari* were initiated in this court by the above petitioners—an employer and his insurance carrier—to annul awards made by the Industrial Accident Commission. The employer, Eric Larson, owns and operates a large grain ranch, some eight or ten miles from the town of Stratford, in Kings County, on which he maintained bunkhouses for the comfort and accommodation of his workmen. On the evening of February 4, 1923, at about 5:30 o'clock, a number of the employees were in one of these bunkhouses, in which a fire was burning in a wood stove used for heating the place. For the purpose of reviving the fire, the camp choreman, Joe Smith, poured coal-oil into the stove from a five-gallon can. An explosion resulted which set fire to the bunkhouse. Smith and the foreman of the ranch, August Stevens, were burned to death. Cecil Miracle, Walter J. Bohn, and Clyde English, employees on the ranch, were more or less severely burned. Application was filed with the respondent Industrial Accident Commission by the widow of Stevens for a death benefit, which was granted. Claims of Miracle, English, and Bohn were also filed, and resulted in an award in favor of each of the three employees. The applications

were considered together by the Commission, and the four proceedings now before this court will be considered as one.

Petitioners' principal contention is that the accident resulting in the death of Stevens, and the injuries to the other applicants for compensation, was not due to an industrial hazard, and therefore does not fall within the provisions of section 6a of the Workmen's Compensation Act. [1] It is, of course, a fundamental doctrine that it was not intended by the compensation act that an employer who comes within its provisions shall be the insurer of his employee at all times during the period of the employment, but is liable for compensation only when the injury occurs to the employee while performing some act for the employer in the course of his employment, or is doing something that is incidental thereto. There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be a causal connection between the employment and the injury which had its origin in a risk connected with the employment, and flowed from that source as a rational and natural consequence. (*California Casualty Indemnity Exch.* v. *Industrial Acc. Com.,* 190 Cal. 433 [213 Pac. 257].) [2] But whether a given accident is so related or incident to the business in which the employee is engaged must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. (*Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418 [44 Sup. Ct. Rep. 153]; *Assurance Corp.* v. *Industrial Acc. Com.,* 186 Cal. 653, 656 [200 Pac. 419].)

[3] Petitioners' first premise is that the injured men were not required to be in the bunkhouse at the time of the explosion and their consequent injury. The proposition falls before the evidence in the case. The Larson ranch was situated ten miles from Stratford, and there was no nearer place where they could obtain lodging. The bunkhouse was the only place provided for that purpose, and was the only place where the men could pass the time while momentarily unemployed. The consideration for their services was not alone the wages paid by Larson, but board and the lodging furnished at the bunkhouse were reckoned as a part of their pay. Larson testified that the men could

not live in town and work for him. The employees, therefore (other than the foreman Stevens, who was furnished a separate house by the employer), were compelled to lodge in the bunkhouse. There was no alternative. The men were required to accept the accommodations provided by their employer or not work for him. This clearly established fact differentiates the proceedings here under review from the many cases cited and relied on by petitioners, and affords the correct basis for the decision in this case. The question thus presented for our consideration is not a new one, and may be regarded as definitely settled in this state.

Almost the same contentions that are now made by these petitioners were presented for our consideration in a case only recently decided. (*Associated Oil Co.* v. *Industrial Acc. Com.*, 191 Cal. 557 [217 Pac. 744].) The question there submitted for decision was whether injuries occurring about and in an employer's bunkhouse, situated on the employer's premises, and sustained by employees during their leisure hours, while reasonably using the bunkhouse in a proper manner during intermissions from work, are within the purview of the Workmen's Compensation Act. We held that employees are in the course of their employment while properly spending their time, when off duty, in the bunkhouse furnished by the employer for such purpose, and at which the men are compelled to live. We said: "The general rule appears to be that when the contract of employment contemplates that the employees shall sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer. (1 Schneider's Workmen's Compensation Law, p. 608, par. 279.) The test is whether or not the workman is given a choice in the matter and is as free as possible to come or go as he pleases." Compensation was denied the employee because he had the choice of going elsewhere for lodging, but preferred the quarters provided by the employer. [4] The facts of the case we are now considering present a situation in which "the employer places the employee in such circumstances that his time is never his own, where he has no discretion as to where he shall sleep and where he shall eat. Under such circumstances the workman must be considered in the

employ of the employer all of the time, or at least perform-
ing a service which is incidental to the employment he is
engaged in.''   (*Holt Lumber Co.* v. *Industrial Com.*, 168
Wis. 381 [170 N. W. 366] ; Honnold on Workmen's Com-
pensation, sec. 109, p. 373.)

The petitioners further contend that the act of the chore-
man Smith in pouring coal-oil from a five-gallon can into
the slumbering fire did not constitute an industrial hazard.
[5]   The right to compensation under the Workmen's Com-
pensation Act is by no means restricted to those cases where
the injury occurs while the employee is actually presently
manipulating the tools of his calling.   (*Judson Mfg. Co.* v.
*Industrial Acc. Com.*, 181 Cal. 300, 302 [184 Pac. 1].)
''Workmen's Compensation legislation rests upon the idea
of status not upon that of implied contract; that is upon
the conception that the injured workmen is entitled to com-
pensation for an injury sustained in the service of an in-
dustry to whose operations he contributes his work as the
owner contributes his capital—the one for the sake of the
wages and the other for the sake of the profits.   The lia-
bility is based, not upon any act or omission of the em-
ployer, but upon the existence of the relationship which the
employee bears to the employment because of and in the
course of which he has been injured.   And this is not to
impose liability upon one person for an injury sustained
by another with which the former has no connection; but it
is to say that it is enough if there be a causal connection
between the injury and the business in which he employs
the latter'' (*Cudahy Packing Co.* v. *Parramore, supra*), and
such injury is proximately caused by the employment.
(Work. Comp. Act, sec. 6.)   [6]   In the present case there
is a direct causal connection between the injuries received
by the men in the explosion at the bunkhouse and their em-
ployment by Larson.   The presence of the men in the bunk-
house was in the course of and incidental to their employ-
ment, as already shown.   Larson testified that part of the
duty of the choreman Smith was ''making fires at the
bunkhouse.''   His act in attempting to revive the fire in
the stove was, therefore, an act done in connection with the
employer's business.   He so carelessly and negligently per-
formed that duty that the explosion resulted, and the men
were injured.   His negligence has not been shown to have

been either willful or sportive, and must be considered a risk incidental to the employment of himself and the other employees on the ranch. (*Laurino* v. *Donovan,* 186 App. Div. 387 [173 N. Y. Supp. 619].) This case was cited approvingly by this court in *Storm* v. *Industrial Acc. Com.,* 191 Cal. 4 [214 Pac. 874]. [7] The fact that the injuries to the employees were not of a kind to be anticipated, nor peculiar to the employment in which they were engaged, does not defeat the claims to compensation in this case. (*Assurance Corp.* v. *Industrial Acc. Com., supra.*)

[8] The petitioners contend that the injured employee Bohn had no work to do in the bunkhouse; that he was there only for his own convenience, and was merely "loafing" at a time when he should have been at work in the fields. There is nothing in the record to support this contention. Bohn was employed in irrigating on the ranch, and was paid so much an hour for his services. He commenced his day's work immediately after breakfast at 6 o'clock in the morning and generally quit about 6 o'clock in the evening. As an irrigator, he was on duty practically all of the time to watch the water. He testified he "was supposed to go whenever the water called" him. On occasions he had "to turn the water off or something" after 6 o'clock. On the day of the accident his work was over for the day, and he quit at 5 o'clock and went to the bunkhouse to pass away the time until supper was ready.

The ranch foreman Stevens lived with his family in a cottage on the ranch. Sometimes he ate at home and sometimes with the men. On the day of the accident he had been working in the fields. Before going home for dinner, he went to the bunkhouse for the purpose of giving orders to the men constituting the night shift operating the caterpillars on the place. The explosion occurred almost immediately after he got there. He was therefore actually engaged in the discharge of a duty, and was doing something for his employer, at the time he received the injury which resulted in his death.

[9] The contention of the petitioners that English and Miracle were "stealing from their employer's time" is not well founded. These claimants were employed together on a dredger operated by petitioner Larson on the ranch some four or five miles from the bunkhouse. They began work

at 7 o'clock in the morning and were supposed to work until 6 o'clock at night. Occasionally they repaired the dredger after that time, and did other work for which they were paid overtime. They were not furnished with lights, and, during the short days, stopped work when it got dark. On such occasions they were usually in camp before 6 o'clock. On the evening in question they were through with their work for the day. They arrived at the bunkhouse at about 5:30, and were waiting for supper when the explosion and fire occurred.

The award in each case is affirmed.

Lawlor, J., Richards, J., Seawell, J., Myers, J., and Lennon, J., concurred.

Rehearing denied.