[S. F. No. 12966. In Bank.—February 26, 1929.]

ENTERPRISE FOUNDRY CO. (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, etc., and ROSE MARY GOYTAN et al., Respondents.

Daniel W. Burbank for Petitioners.

G. C. Faulkner, Thos. W. Slaven and Bronson, Bronson & Slaven for Respondents.

PRESTON, J.—This matter is before us upon a writ to review an award made by the Industrial Accident Commission against petitioner California Casualty Indemnity Exchange, the insurance carrier for petitioner Enterprise Foundry Co., and in favor of respondent Rose Mary Goytan, allowing her death benefit and burial expenses following the death of her husband, John Goytan, an employee of said Enterprise Foundry Company.

The sole question presented is whether the finding of the commission that said John Goytan, deceased, sustained a fatal injury by a gunshot wound "occurring in the course of and arising out of his employment" is sustained by the evidence in the record and will support the said award. Or the question may be stated another way: Under the facts shown, does liability for compensation exist against said employer because of the killing of said employee on his way to work by a striker?

That the injury arose or grew out of decedent's employment may be conceded; whether at the time of the injury he was, in fact, "performing service . . . incidental to" and was "acting within the course of his employment" (Workmen's Compensation Act, Deering's General Laws, Act 4749, p. 1714, sec. 6), is the real point at issue. ■ It is essential to the power to make an award, and the burden is upon an applicant for compensation to show not only that the injury arose out of but also that it occurred within the course of the employee's employment. (27 Cal. Jur.,

sec. 59, p. 341, and many cases there cited; *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 Pac. 744]; *London G. & A. Co.* v. *Industrial Acc. Com.*, 190 Cal. 587 [213 Pac. 977]; *California C. I. Exch.* v. *Industrial Acc. Com.*, 190 Cal. 433 [213 Pac. 257].)

The facts, virtually undisputed, follow: In 1924 said decedent, John Goytan, who had entered the employ of the Enterprise Foundry a number of years before as an apprentice, and who had later become a journeyman-molder and member of the Molders Union, was advanced to the position of foreman, being in entire charge of his department. He also became a stockholder in said company. At the time of his promotion to said position of foreman and because of it, the Molders Union gave him an honorary card of withdrawal from membership therein.

About the year 1922 employers in and about San Francisco adopted the American plan or "open shop" and the labor unions became involved with them in an industrial warfare which lasted for some four or five years. Illegal methods were used by the strike sympathizers and many open-shop employees were assaulted. From 1922 to January 1, 1925, said Enterprise Foundry operated a union shop, but on or about said date it started to operate the plant as an open shop and the Molders Union immediately called a strike on it, whereupon strike-breaking laborers were hired to take the place of the strikers.

Said John Goytan continued undisturbed with his regular work as foreman. Between January and August, 1925, three employees of the plant were assaulted. Thereafter for eleven months, from August, 1925, to July, 1926, no assaults occurred. During part of the year 1925 transportation for the purpose of protection to and from work for the strike-breakers employed at the foundry was furnished; after November, 1925, no transportation whatsoever was furnished. Decedent, however, never availed himself of this special transportation. Apparently he was not at all apprehensive of personal danger from the union, for at all times he pursued his custom of walking the twelve blocks between his home and place of work. During the year 1925 he received two letters asking him to stop work and join the union and in June, 1926, two union officers called at his home and repeated that request, to which he refused to accede.

Decedent's hours of employment were from 8 A. M. to 4:30 P. M., and in addition thereto he sometimes outlined his work for the following day while sitting at home after supper. On the morning of July 8, 1926, he left home about 7:30 A. M., evidently headed for his place of work. When but two and a half blocks from it he was shot in the leg by some unknown party who drove away in an automobile. The injury resulted in his death two days later. He left surviving him his wife and two minor children, respondents herein. The commission found that said injury was sustained in the course of and arising out of decedent's employment and made the aforesaid award in favor of his widow, which award petitioners here seek to have annulled. Petitioners do not concede that said injury was inflicted by strikers. There was ample and sufficient evidence, however, to warrant the commission in believing that it was so inflicted and for the purposes of this opinion such may be assumed to have been the fact.

▇ The general rule, sometimes designated the "going and coming rule" which has been considered and applied by this court in numerous cases, is that where the person injured is employed to perform service at or in a particular plant or upon particular premises and where the injury claimed to be compensable is inflicted while he is going to or returning from his place of employment or where he has left the place of employment on an errand personal to himself, said injury inflicted under such circumstances is not compensable. This rule, however, is subject to many exceptions and each case must be adjudged by the facts which are peculiarly its own. (*Makins* v. *Industrial Acc. Com.*, 198 Cal. 698, 703 [49 A. L. R. 411, 247 Pac. 202]; *California C. I. Exchange* v. *Industrial Acc. Com., supra; London G. & A. Co.* v. *Industrial Acc. Com., supra.*)

Respondents contend that under the facts of this case, the exception and not the rule is controlling. To support their position they urge that prior to January 1, 1925, said Enterprise Foundry was engaged solely in the business of production in its plant, but that upon said date it declared for the open shop as aforesaid and thereby then and there became engaged in and made it its business to fight the unions, which business of waging warfare it carried on in addition to its said regular prior business of production in its said

plant; that it pledged to the purpose of this fight its every resource, money as well as employees, and that its employees then and there entered into its service and became entitled to its protection in opposing the labor union; therefore, the injury received by decedent in the course of the strike was incidental to his employment and was compensable.

We are not inclined to the above view. There is no evidence that said employer attempted to wage industrial warfare or entered into that business or any new business whatsoever; on the contrary, it endeavored to carry on its business through the usual channels, replacing shop laborers when necessary. No men were hired especially to wage the warfare nor was any effort whatsoever being made to afford protection to its employees at the time of the injury to decedent. Decedent pursued his usual work in just the way he had been doing it for years. The strike, so far as the record shows, caused not even a ripple on the surface of his customary orderly procedure. His method of going to and returning from work, which was of his own choosing and was separate and apart from his employment, remained as it had always been, uncontrolled and uninfluenced by his employer. It must be remembered also that this is not the case of injury to an employee hired as a strike-breaker; that element does not enter into this situation. It is true that the strike took place during the time of decedent's employment by said foundry, but his work and position therein were in nowise affected by that circumstance. We may, therefore, eliminate the element of existence of said strike, which has no true connection with or bearing upon the services decedent was performing for said foundry at the time of his injury and it can then scarcely be denied that this case comes within the general rule above announced, and we so hold. In other words, said injury having been received while the employee was walking to his work, prior to entry of his employer's premises, and at a time when he was not engaged in any service whatsoever for his employer, or any service incidental to or in the course of his employment, it is not compensable.

Many cases are found touching upon this point, but, as above stated, each case must be adjudged upon the facts peculiarly its own. The authorities cited by respondents we find are not in conflict with the above determination for in

each of them wherein a contrary holding is announced there appear particular facts and circumstances which distinguish it from the instant case and compel a different conclusion from the one herein reached.

We have studied carefully the case of *Lampert* v. *Siemons,* 203 App. Div. 264 [197 N. Y. Supp. 25], where, after consideration of the usual rule that injuries received while going to and from work do not arise in the course of the employment, the court held as an exception to said rule the case of a faithful employee, a department head, who remained on duty during a strike of the employees and was assaulted by a striker on his way to work, the injury so received being deemed one arising "out of and in the course of the employment." We agree with and adopt as authority for our ruling here made the reasoning of the New York appellate court in reversing said decision (*Lampert* v. *Siemons,* 235 N. Y. 311 [139 N. E. 278–280]), which is in part as follows:

"The claimant has been awarded compensation as the state industrial board and the Appellate Division were of the opinion that these injuries arose out of and in the course of Lampert's employment. That they arose out of his employment is conceded; whether they were received in the course of his employment is the point in question.

"Had there been no strike, Lampert's employment would have ended when he left the factory at 134 West Thirty-ninth street. His work was indoor work as foreman of the operating room. There was no work for Lampert to do for his employer after he left the factory at night and before he reached there in the morning. Therefore, all the authorities agree that while going to and from his work Lampert, if injured, would not come under the Workmen's Compensation Law as such injury would not have arisen in the course of his employment (citing cases). . . .

"There is a line of cases which hold that an employee injured while on the streets or in a conveyance may recover compensation. These are cases where the nature of the claimant's work took him to and in the place where he was injured, and where at the time he was actually engaged in doing that for which he was paid . . . ; also compensation has been allowed where the employee was injured while traveling to and from his work in a conveyance furnished by

the employer under the contract of employment and the necessities of the situation. . . . In this case, however, Lampert was not doing work for his employer while going to and from his home, neither was he being transported in a conveyance furnished by and under the control of his master.

"The application of the rule which has been made by the court below would carry us very far afield. If under ordinary circumstances and within the authorities first above cited, Lampert was not carrying on any work for which he was employed while going home or coming to the factory, what was there in the strike which could possibly change this fact? The strike could not extend the field of his employment or the limits of his occupation unless he were employed to do something in connection with the strike which of course is not this case. That he was in danger on the streets because of the strike is beyond question, but the danger existed at all times and not necessarily while Lampert was going to and from his work. He could have been assaulted by a striker on the streets while he was going from his home to do an errand or while going to the theatre or to a dance or other place of amusement. If the limits of his employment can be extended under such circumstances to cover the distance between his home and the factory, why cannot those limits also be extended to reach any place and any activity in which the workman may be after working hours? The danger may exist in one place as well as another. The fact that the employer may have offered or ordered protection from strikers to the employee while he was upon the street and after the hours of his work would not or could not change the nature of his work or the time of its commencement and completion. The statute says that an employee must be injured while in the course of his employment. In this case Lampert's employment ceased when he left the factory.

"The views which we here express have been the ruling in other jurisdictions where a similar state of facts has presented the same question. (*Poulton* v. *Kelsall*, L. R. 2 K. B. (1912) 131; *Rourke's Case*, 237 Mass. 360 [13 A. L. R. 546, 129 N. E. 603].) In both these cases, there was an agreement to protect the employee from strike violence. The order of the Appellate Division should be reversed and the

award of the state industrial board set aside and the claim dismissed, with costs to the appellants."

The award of the Industrial Accident Commission is annulled.

Curtis, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.

SHENK, J., Dissenting.—I dissent. The majority opinion properly concedes that the gunshot wound which resulted in the death of the deceased employee, Goytan, arose out of the employment. But the going and coming rule is applied and it is held that the injury was not received by the decedent while "performing . . . service incidental to" the employment and that he was not "acting within the course of his employment," as contemplated by the Workmen's Compensation Act. This holding is contrary to the finding of the Industrial Accident Commission and, in my opinion, is based upon the erroneous conclusion that the evidence does not support the finding. It is an undisputed fact that an industrial warfare was in progress in which the employer was involved. The decedent had been visited by strikers and had been warned to quit work or suffer the consequence. He continued in service with the knowledge and consent and impliedly at the instance of the employer. The majority opinion further concedes that there was ample evidence that the injury was inflicted by strikers. Under these circumstances I cannot escape the conclusion that the assault and the attendant death were incidental to the employment without which the injury would not have happened. Except for the employment there would have been no incentive on the part of the strikers to punish him for remaining in the service of his employer and to cripple his employer by injuring him. Under the circumstances existing at the time the street became for the decedent a special zone of danger solely because of the employment. In going and coming from his work the decedent assumed a risk for the benefit of his employer, reasonably to be contemplated, special and temporary in character, and not shared by the commonalty in the use of the streets. These considerations, which seem to me to be incontrovertible, would sustain the finding of the commission. (See *San Diego etc. Co.* v. *Industrial Acc.*

*Com.*, 193 Cal. 341 [223 Pac. 972]; *Globe Indem. Co.* v. *Industrial Acc. Com.*, 193 Cal. 470 [225 Pac. 273].) The case of *Lampert* v. *Siemons*, 235 N. Y. 311 [139 N. E. 278], mainly relied upon by the majority, runs counter to the liberal construction enjoined upon the courts of this state by the Workmen's Compensation Act and as actually applied by this court. The reasoning and conclusions of the appellate division of the supreme court of New York in the same case (*Lampert* v. *Siemons*, 203 App. Div. 264 [197 N. Y. Supp. 25]) are more in harmony with the administration of the law in this state. This court, on June 2, 1927, in the case of *Fidelity & Casualty Co.* v. *Industrial Acc. Com.* (L. A. No. 9884), denied without opinion a petition for a writ of review and denied a rehearing in the same matter on July 2, 1927. In that case the finding of the commission was that the deceased employee was performing service growing out of and incidental to his employment at a time when he was playing pool for his own amusement in a public pool-hall and was stabbed by a discharged and disgruntled fellow employee. The injured employee had been instructed by his superior to notify the other employee of the latter's discharge from service. The injured employee went out to hunt for the other. The discharged employee heard of his fellow employee's mission, saw him in the pool-hall, and stabbed him. We concluded that the employment exposed the injured employee to a special risk arising out of and in the course of his employment wherever he might be. I entertain no doubt of the correctness of our conclusion in that case, and the same theory of the law should be applied to the facts in the present case. It is freely admitted by the majority opinion that the going and coming rule is properly subject to exceptions, depending on the facts in each particular case. In my opinion the present case presents a well-defined exception to the general rule.

Richards, J., concurred.

Rehearing denied.

Richards, J., and Shenk, J., dissented.