[S. F. No. 15025.   In Bank.—November 1, 1934.]

POSTAL TELEGRAPH CABLE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and CHAS. RUDY MAHRET, Respondents.

Smith, Southwell & Smith, Sanborn H. Smith and R. P. Wisecarver for Petitioner.

Everett A. Corten and George Olshausen for Respondents.

Gibson, Dunn & Crutcher, Edward E. Bacon, Ira C. Powers, B. E. Pemberton, Edmund D. Leonard, Ivan A. Schwab, Daniel W. Burbank, C. F. Laumeister, Stanley Burke, Bronson, Bronson & Slaven, John H. Painter, Pillsbury, Madison & Sutro, Jesse H. Steinhart, John J. Goldberg, George L. Greer, Wyckoff, Gardner & Parker, Cooley, Crowley & Supple, O'Connor, Fitzgerald & Moran, Hadsell, Sweet, Ingalls & Lamb, Redman, Alexander & Bacon, Myrick & Deering and Scott, Neumiller & Ditz and Gerald M. Desmond as *Amici Curiae* on Behalf of Petitioner.

PRESTON, J.—This application for *certiorari* must be sustained, as will appear from a consideration of the fundamental limits set by the law establishing the workmen's compensation system (Act 4749, Deering's Gen. Laws, pp. 2272 et seq.).

Petitioner is the Postal Telegraph Cable Company, a corporation. Respondents are the Industrial Accident Commission and Chas. Rudy Mahret, who was in the employ of petitioner as a motorcycle messenger. Said employee was injured in a traffic collision at Geary Street and Presidio Avenue, San Francisco, on August 31, 1932, while going from his home at 1728 Anza Street, along Geary Street, to his place of employment at Van Ness Avenue and Pine Street in said city. He was traveling on his motorcycle, with side car attachment in which was riding a friend whom he was taking to his place of employment.

Petitioner employed three classes of messengers, foot, bicycle and motorcycle. Mahret furnished, fueled, maintained and operated his own motorcycle, and was paid compensation for his services and for use of the machine in the sum of approximately $30 per week, there being no segregation of the respective amounts allowed to cover each of these items. He was furnished a uniform for which a charge of 6 cents a day was made against him. His hours were from 8 A. M. to 6 P. M., with an hour off for lunch. The employer furnished no place to house or garage the motor-

cycle. The custom of the motorcycle messengers was to ride their machines to and from work and garage them either at their homes or on near-by premises in whatsoever manner they desired. At the time he was injured Mahret was on no special errand for petitioner and he had not yet reached his place of employment where his duties were to begin. It may be fairly inferred that he was required to furnish and maintain the motorcycle for his use in messenger service and, as above stated, his employer maintained no facilities for storing the car when off duty.

Do these facts entitle the employee, under the act, to compensation for his said injuries? Section 6 thereof (Deering's Gen. Laws, *supra*, p. 2276) provides ''Liability for the compensation provided by this act, . . . shall . . . exist against an employer for any injury sustained by his employees arising out of and in the course of the employment . . . in those cases where the following conditions of compensation concur . . . (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment.''

■ Upon what basis can it be said that the injury here was one arising out of and in the course of the employment or occurring while the employee was ''performing service growing out of and incidental to his employment''? These elements must all be present to authorize compensation: *Enterprise Foundry Co.* v. *Industrial Acc. Com.*, 206 Cal. 562 [275 Pac. 432]; *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 Pac. 744]; *London G. & A. Co.* v. *Industrial Acc. Com.*, 190 Cal. 587 [213 Pac. 977]; *California C. I. Exch.* v. *Industrial Acc. Com.*, 190 Cal. 433 [213 Pac. 257]; Glass on Workmen's Compensation, p. 232; Willis on Workmen's Compensation, p. 9.

In the case of *California C. I. Exch.* v. *Industrial Acc. Com., supra,* at page 436, it is said: ''There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury. There must be some causal connection between the employment and the injury in the sense that, by reason of the employment, there was an unusual or additional exposure of the injured party to the

kind or character of hazard and danger (in this case an ordinary street risk) which caused the injury.''

When an employee is off duty the relation of employer and employee is suspended and does not reattach until the employee resumes the master's work. It is true that this re-entry into service may occur under special circumstances before the employee reaches the premises of the master, but this can happen only where, by contract, express or implied, the relationship attaches at such earlier time. We need not pause to give examples of this exception.

The contract here did not require of Mahret any particular means of travel to and from his place of service. Whether he used the motorcycle to transport himself from his home to his place of employment and return, was of no concern to his employer under said contract. Likewise, the question of whether he stored the machine at or near the master's premises or stored it at home or near by is a false factor in the problem. The essence of the arrangement was that said employee report at 8 A. M. with a motorcycle ready for service; the service began at said place and at said time and not at a place and time when the employee was en route from his home and, as in this instance, many blocks away from the place of service.

This employee was on no errand for his employer and was traveling under no restrictions of any kind as to mode or direction of travel. He could not only deviate for the convenience of his friend but could also perform any task for himself or for another at any time before reaching the place where his duties were to begin. This holding is in accord with the overwhelming weight of authority where the principle involved is identical with that found in ·the instant case.

Some of these cases are: *Grathwohl* v. *Nassau Point, etc.*, 216 App. Div. 107 [214 N. Y. Supp. 496], affirmed by the Court of Appeals, 243 N. Y. 567 [154 N. E. 608] ; *Thompson* v. *Glen Hill Gravel Co.*, 19 La. App. 854 [141 So. 797] ; *Fidelity & Cas. Co.* v. *Industrial Acc. Com.*, 79 Utah, 189 [8 Pac. (2d) 617] ; *Morey* v. *City of Battle Creek*, 229 Mich. 650 [202 N. W. 925, 38 A. L. R. 1039] ; *Johnson* v. *State Highway Com.*, 125 Me. 443 [134 Atl. 564] ; *Denver & R. G. W. R. Co.* v. *Industrial Acc. Com.*, 72 Utah, 199 [269 Pac. 512, 62 A. L. R. 1436] ; *Hartford Acc. & Ind. Co.*

v. *Lodes*, 164 Okl. 51 [22 Pac. (2d) 361]; *Kneeland* v. *Parker*, 100 Vt. 92 [135 Atl. 8, 48 A. L. R. 1396]; *Inland Gas Corp.* v. *Frazier*, 246 Ky. 432 [55 S. W. (2d) 26]; *Chernick's Case*, (Mass.) 189 N. E. 800.

In fact this case cannot be successfully distinguished from the case of *Holopoff* v. *Industrial Acc. Com.*, 131 Cal. App. 554 [21 Pac. (2d) 649]. The only case to the contrary is *Maryland Casualty Co.* v. *Smith*, (Tex. Civ. App.) 40 S. W. (2d) 913. Counsel assert that it is distinguishable from the case at bar upon the wording of the statute of Texas, which provides: That the words "injury received in the course of employment" shall include "all other injuries of every kind and character having to do with, and originating in the work, trade, business or profession of the employer, received by the employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere". See *American Indemnity Co.* v. *Dinkins*, (Tex. Civ. App.) 211 S. W. 949; also, *Federal Surety Co.* v. *Ragle*, (Tex. Civ. App.) 25 S. W. (2d) 898. But we need not consider the strength of this claim altho it seems to be recognized by the Texas courts. We prefer to rest our conclusion upon the proper construction of our own statute, steadied by the fact that statutes using the identical language of our own have been uniformly construed as not covering cases of the character of this one.

Again, to sustain respondents' claim would be to admit a liability of the employer for the torts of the employee committed while off duty. This identical question was before the Supreme Court of Washington in the case of *Carroll* v. *Western Union Tel. Co.*, 170 Wash. 600 [17 Pac. (2d) 49], and it was there held under circumstances in all essential respects identical with those of the instant case that as a matter of law the employer was not liable.

The award is annulled.

Waste, C. J., Shenk, J., and Spence, J., *pro tem.*, concurred.

LANGDON, J., Dissenting.—I dissent. This case has had a somewhat checkered career. In the proceeding before the Industrial Accident Commission, compensation was awarded

to the respondent employee. An application for a writ of review was denied by the District Court of Appeal, First District, Division One, without opinion. A hearing was granted in this court, and our decision was rendered May 17, 1934, affirming the award, no dissent being filed. A petition for rehearing was nevertheless granted on June 15, 1934, and the court now, in an opinion signed by four justices, annuls the award. Justices Thompson and Seawell, who participated in the original decision, were not present at the oral argument on rehearing, and hence are disqualified from participating in the present decision. Justice Curtis is absent. Justice Spence of the District Court of Appeal is at present a justice of this court *pro tem.*, and his signature is necessary to make this a majority opinion. On this important case, therefore, the latest decision appears to be influenced largely by the temporary and fortuitous change in the personnel of the justices qualified to pass upon it.

I am convinced that the original disposition of the cause was proper, and I adopt as my dissent, the former opinion of this court, reading as follows:

"This is a petition by an employer to review an award of the Industrial Accident Commission. Charles Mahret, the injured employee, was hired as a messenger boy, to deliver telegrams for the Postal Telegraph Cable Company at its branch office at Pine street and Van Ness avenue in San Francisco. He used a motorcycle, which he owned and maintained himself. On the morning of the accident, he was driving to work in the machine, and was struck by a street car, sustaining injuries. The commission found that the accident occurred in the course of, and arose out of the employment, and gave its award of compensation, based upon weekly earnings of $30.

"Petitioner attacks the award chiefly on the ground that the case is governed by the 'coming and going rule', that is, that injuries sustained by an employee on his way to work, or returning from work, are not compensable. Recognizing that this rule is subject to exceptions, as where the employee is compelled to use a particular method of transportation as incident to his employment, petitioner contends that no such exception is established here. It is said that the company pays a fixed rate per message for delivery thereof, and employs foot, bicycle and motorcycle messengers,

and that it is optional with the employee whether he delivers a message on foot or uses the mechanical methods of transportation.

"The record does not support this position. The testimony clearly shows that the company hires all three classes of messengers, but that after being hired, a messenger is placed in one of the classes, and is assigned to an office where his services can be effectively used. Messengers without machines are placed in offices in the business district; motorcycle messengers are assigned to the more outlying districts. Thereafter, in the absence of some emergency, the messenger must appear equipped to do the work in the place to which he is assigned. Mahret was hired as a motorcycle messenger, and was required to report for work each day with his machine.

"This fact alone would not, of course, take the case out of the 'coming and going rule'. But the record also establishes without conflict the fact that no facilities for storage of the machines were afforded by the company, so that Mahret was forced to make his own arrangements for garage and maintenance. The case, then, is one where the nature of the employee's work compels him to drive to and from work with the machine, unless he pushes it before him. Are injuries received during such driving compensable? We think that they are. The risks to which the employee is subject are a result of the employment, and the situation is essentially the same as where the employer furnishes transportation and compels the employee to make use of it. It is, of course, well settled that in the latter case, that is, where the employer furnishes and controls the transportation, the injuries received are compensable. (*Rader* v. *Keeler*, 129 Cal. App. 114 [18 Pac. (2d) 360]; *Trussless Roof Co.* v. *Industrial Acc. Com.*, 119 Cal. App. 91 [6 Pac. (2d) 254]; *Dominguez* v. *Pendola*, 46 Cal. App. 220 [188 Pac. 1025]; *Sylcox* v. *National Lead Co.*, 225 Mo. App. 543 [38 S. W. (2d) 497].)

"A factual distinction between the instant case and those cited above, which is greatly stressed by petitioner, is that in the cited decisions the employer owned the means of transportation, while in the instant case the employee was the owner. But this distinction is immaterial in determining the right to compensation. This right depends upon the

existence of a risk peculiar to the employment. Where, by express directions, or with the knowledge and acquiescence of the employer, the employee is *compelled* to make use of a certain method of transportation, the risk involved in its use is one which results from the employment, and it can make no difference whether the vehicle is owned by the employer, the employee or a third party; nor can it make any difference whether it was operated by the employer, the employee or a third party.

"A case directly in point is *Maryland Casualty Co.* v. *Smith*, (Tex. Civ. App.) 40 S. W. (2d) 913. There the employee, hired to deliver parcels, was required to furnish his own motorcycle, but was given no place to store it, and consequently had to keep it himself. He was injured on his way to work and the court affirmed an award of compensation. Petitioner suggests that differences in the terminology of the Texas and California Workmen's Compensation statutes may account for the decision, but we are unable to see wherein the general language of the Texas act, authorizing compensation when the employee is 'engaged in or about the furtherance of the affairs or business of the employer', is broader than that of our own. It may be observed that the opinion in the Maryland Casualty Company case relies for its basic governing principles upon a Minnesota decision, *Novack* v. *Montgomery Ward & Co.*, 158 Minn. 495 [198 N. W. 290], and the statutory language therein considered was the same as that found in the California act, that is, compensable injury must occur 'in the course of employment' and must 'arise out of it'.

"The Industrial Accident Commission of this state has previously indicated its approval of this exception to the 'coming and going rule', even where the employee uses his own machine. (*Hartford Acc. & Ind. Co.* v. *Industrial Acc. Com.*, 17 I. A. C. 162.)

"Petitioner places great reliance upon the case of *Holopoff* v. *Industrial Acc. Com.*, 131 Cal. App. 554 [21 Pac. (2d) 649]. There the employee was a delivery boy using his own motorcycle, and was injured on his way to work. The commission denied compensation, and its decision was affirmed. The case bears some resemblance to the instant case, but upon full consideration we do not deem it conclusive. The main point with which the court was concerned was whether

the employee had deviated from his regular route on the morning in question on an errand for his employer or for his private purposes. It appeared that he had called on a friend to deliver something to him. The court held that the deviation was for a private purpose, and that at the time the employee was not acting in the course of his employment. The court's general statement of the 'coming and going rule' is not significant for nothing appears in the opinion to suggest that the employee was compelled, by the nature of his employment, to make his own arrangements to store his machine. This element is, as we have seen, the controlling consideration in the case before us. We are satisfied that the conclusion of the commission that the injuries of Mahret were compensable finds support in the record and in the law.

''The only other question is whether the commission properly awarded compensation based upon Mahret's gross earnings of $30 per week, or whether it should have deducted therefrom the cost of maintaining the motorcycle, amounting to $50 per month. The statute, section 12, subdivision b, provides that the average weekly earnings shall not include any sum which the employer may pay to the employee 'to cover any special expense entailed on him by the nature of his employment'. It seems clear that Mahret was not paid any sum as special expenses. His earnings were $30 per week, and the fact that his job required him to pay for the upkeep of a motorcycle does not mean that his employer paid him the cost of such upkeep as 'special expenses'. The language of the act does not permit such deduction any more than it permits deductions for the cost of tools or clothes. This view is fully developed in *Springfield Coal Min. Co.* v. *Industrial Com.*, 291 Ill. 408 [126 N. E. 133, 22 A. L. R. 859], where, under a statute practically identical with our own, the supreme court of Illinois held that where coal miners were compelled to equip themselves with drilling machines, shovels, lamps, carbide, powder, fuse, squibs, picks, wedges, sledges and tool and supply boxes, but were paid at a certain rate per ton of coal mined, it was improper to deduct the cost of these articles from the gross earnings to determine the basis of a compensation award. There is, to be sure, a decided conflict of authority on this point. The opposite view is presented in *Richards*

v. *Central Iowa Fuel Co.*, 184 Iowa, 1378 [166 N. W. 1059]. We are of the opinion that the rule of liberal construction in favor of compensation, declared in our statute, section 69a, necessarily leads to the interpretation made by the commission."

Rehearing denied.

Langdon, J., and Thompson, J., voted for a rehearing.