[Civ. No. 62639. Second Dist., Div. Two. Oct. 19, 1981.]

PHYLLIS DIANE LEFFLER, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, FLUOR
CORPORATION et al., Respondents.

**COUNSEL**

Gantman & Gantman and Leslie C. Burg for Petitioner.

Zonni, Ginocchio & Taylor and Scott Z. Silver for Respondents.

OPINION

**COMPTON, J.**—Petitioner seeks review of the decision of the Workers' Compensation Appeals Board (WCAB) that her spouse's death did not arise out of and occur in the course of employment for respondent Fluor Corporation (Fluor). Because of the uniqueness of the factual circumstances we granted a writ of review. After a consideration of the record and the policy considerations which underlie our system of workers' compensation, we have concluded that the decision of the WCAB must stand.

Petitioner Phyllis Diane Leffler (claimant) is the surviving spouse of John Joseph Leffler (decedent). At the time of his death on September 2, 1977, decedent was employed by Fluor as an assistant superintendent at a refinery construction project in Isfahan, Iran. Decedent, a California resident, and Fluor entered into a written employment contract for decedent to work for Fluor in Iran. Jurisdiction by the WCAB over the injury herein is not disputed. (See Lab. Code, § 5305.)

Section IV, paragraph F of the employment agreement, entitled "Housing Allowance," provided: "Housing and utilities will be provided by the Company." As a consequence, decedent and claimant were provided an apartment in a 20-unit complex in Isfahan. While Fluor did not own the apartment complex, all the apartments in the complex were occupied by Fluor employees. Decedent's fatal injury resulted as a consequence of his diving off the balcony of his apartment into a swimming pool of the apartment complex.

Decedent and claimant gave a wedding anniversary party for themselves in their apartment in Isfahan on September 1, 1977. They lived on the third floor of the building; the apartment complex having three floors of apartments and a ground floor. On the ground floor was a swimming pool about 14 feet deep. The pool was beneath the balcony of their apartment. During the party decedent's new boss, Jerry Guerney, and decedent discussed decedent's ability to dive off the balcony of the apartment into the pool; decedent made a $20 bet with Guerney that he could.[1] While someone apparently had dived from a lower floor into the pool, no one had previously dived from the third floor. No time was set

---

[1]According to claimant, decedent was a skilled high diver, although the height of the balcony was 10 to 20 feet higher than that of any dive which decedent had previously made.

for performance of the dive. The only stipulation was that someone else be present as a witness besides claimant.

The next day, September 2, 1977, decedent dove from his balcony into the pool below, ignoring the protests of claimant. A coworker of decedent, Mr. Short, and his spouse were present at the time. Decedent then came back into the apartment building, knocking on doors announcing that he was the first one to dive from the third floor. When decedent arrived back at his apartment, he complained of back and chest pain. Shortly thereafter, he collapsed and was taken to a hospital where he died. Alvin Markovitz, M.D., the consulting physician for respondent Granite State Insurance Company, the workers' compensation insurance carrier for Fluor at the time of injury, per his report dated December 23, 1980, acknowledged that decedent's death most probably resulted from a ruptured aorta as a consequence of the dive.

In support of his ruling that decedent's death was not compensable under the Workers' Compensation Act, the workers' compensation judge reasoned: "It appears that decedent would have been entitled to the application of the bunkhouse rule but for the fact that diving from his balcony into the pool on a bet is not reasonable conduct. . . . The conduct amounts to horseplay. *Hodges* v. *WCAB* (1978) 82 Cal.App.3d 894, 43 C.C.C. 810; *Beaty* v. *WCAB* (1978) 80 Cal.App.3d 397, 43 C.C.C. 444." The WCAB, in a two-to-one decision, affirmed this ruling. In denying reconsideration, the majority stated in part that decedent's dive "clearly constituted 'horseplay' and was not a 'reasonable and anticipatable' use of the premises."

Compensability for decedent's death turns on consideration of three interrelated issues. First, whether the "bunkhouse" rule applies to the apartment building in which decedent and claimant lived while in Iran. Secondly, whether the decedent's diving off the third floor balcony into the pool constituted "horseplay." Lastly, if such conduct was horseplay, whether the employer condoned such conduct thereby making the injury compensable.

■ "The bunkhouse rule is merely an extension of the general rule that where an employee is injured on his employer's premises as contemplated by his contract of employment, he is entitled to compensation for injuries received during reasonable and anticipatable use of the premises." (*Argonaut Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 677 [55 Cal.Rptr. 810].)

Pursuant to an express provision of the contract of employment here, Fluor was required to provide decedent and claimant with housing while in Iran. It was claimant's unrebutted testimony that all the other tenants in the building were Fluor employees and their families and that neither claimant nor decedent paid rent on the apartment. The only reasonable inference is that Fluor leased the apartment for decedent and claimant pursuant to the contract of employment. (See *Sully-Miller Contracting* v. *Workers' Comp. Appeals Bd.* (1980) 107 Cal. App.3d 916, 925-926 [166 Cal.Rptr. 111].)

Based upon the undisputed facts herein, we conclude that the bunkhouse rule applies to applicant's injury. We must now turn to the question of whether decedent's diving off the balcony constituted reasonable or anticipatable use of the premises, and if not whether it was nevertheless condoned by the employer.

The conduct in question was not part of a course of ordinary frolicking conduct engaged in by Fluor employees of which Fluor was aware, nor can it be viewed as a usual form of recreational activity. It was an isolated act under extremely unique circumstances, to wit, a "daredevil performance" in a dangerous activity by a person with some skill in the field. In short, we conclude that it was not conduct which was a reasonable use of the employer's premises nor was it conduct which could reasonably have been anticipated. To hold that the death here was compensable would, in our opinion, do violence to the spirit and purpose of the workers' compensation law.

We here set forth a portion of the board's majority opinion which, in our opinion, correctly analyzes the circumstances. "The only connection between the employment and the dive is the fact that Mr. Leffler's supervisor made the $20.00 bet with him. But, under the circumstances, a $20.00 bet cannot be considered a monetary incentive, since the decedent was earning over $50,000 a year. Nor does it appear from the evidence that the decedent jumped because of any perceived employer pressure. Rather, Mrs. Leffler's testimony and the fact that the dive was made when the supervisor was not present indicate that the decedent saw the chance to dive into the pool as a personal challenge. Furthermore, the bet was made in a purely social situation and it was quite clear to Mr. Leffler that the supervisor was not acting as a representative of the employer when he made the bet. Moreover, the dive into the pool was plainly not done to increase the decedent's esteem in the eyes of the employer and the employer would not have any reason

to reward this type of activity. Thus, whether or not the 'bunkhouse' rule applies, it is clear that the death did not arise out of and occur in the course of the employment."

Claimant reminds us that the cornerstone of the workers' compensation scheme is the absence from the disposition of claims for injury of any consideration of fault on the part of the employee or employer.

While we acknowledge that premise, we must at the same time look to the fundamental criteria for compensation and that is that the injury must arise out of and occur during the scope of the employment relationship. The "bunkhouse" rule, as noted, is a refinement or extension, if you will, of that fundamental criteria by embracing within the "scope of employment" injury occurring on the premises of the employer even including employer-furnished housing and even though the injury occurred during off-duty or leisure hours.

On the other hand, the workers' compensation law and its progeny, the "bunkhouse" rule, like any other rule of law must be applied in a rational and common sense fashion and with an eye to achieving its objective, to wit, the compensation of workers for injuries arising out of their employment.

It could not be seriously argued that an employee who dies as a result of playing "Russian Roulette" with fellow employees even while on the employer's premises, was, at the time, in the scope of his employment. Such conduct is beyond reason and not what any employer could reasonably contemplate—neither is diving from a height of four stories into an ordinary swimming pool.

The decision is affirmed.

Roth, P. J., and Beach, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 16, 1981.