[No. D050358. Fourth Dist., Div. One. Dec. 18, 2007.]

MARCK O. VAUGHT et al, Plaintiffs and Appellants, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

David H. Greenberg and R. Scott Houtz for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, David S. Chaney, Chief Assistant Attorney General, James M. Schiavenza, Assistant Attorney General, Kristin G. Hogue and Richard F. Wolfe, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**McCONNELL, P. J.**—We hold the workers' compensation exclusivity rule of Labor Code[1] section 3602 bars the civil action of plaintiffs Marck O. Vaught (Marck) and Maria Vaught (Maria) (together the Vaughts) against Marck's employer, the State of California (State), for injuries he sustained while residing on state premises. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Since 1981, Marck has worked as a park ranger for the State, through the Department of Parks and Recreation (Department). In 2004, Marck accepted a new position as resource ranger in the State's Colorado Desert District (District). Marck's position required him to be on call "all the time."

As inducement to accept the new ranger position, the State offered the Vaughts residence in the smaller of two homes it owns in Vallecito Ranch, located within the District. Marck rejected that offer, but agreed to take the position if they could live in the larger ranch house. Marck admitted the State offered him residence in the ranch house as an "employment benefit." The Vaughts agreed to a month-to-month rental agreement with the State and moved into the ranch house.

The Vaughts later discovered a water leak in one of the bathrooms. Department personnel attempted to repair the water leak. Because Marck was off work, the Vaughts left their home to go hiking in the park to escape the noise from the repair work. When they returned home, they found the repairs in the bathroom incomplete and the water shut off. Once Maria turned the water back on, Marck noticed the exposed pipes still leaked. As Marck attempted to get up from the bathroom floor, where he had observed the pipes while "on all fours," he slipped and fell, sustaining injuries.

The Vaughts sued the State for negligence and failure to make the ranch house habitable for human occupation. Maria's negligence claim is for loss of consortium due to the injuries suffered by Marck.

The State moved for summary judgment on the ground the workers' compensation exclusivity remedy rule, found in section 3602, subdivision (a), barred the Vaughts' action. The trial court granted the motion and entered judgment for the State.

---

[1] Further statutory references are to the Labor Code unless otherwise specified.

## DISCUSSION

### I

### *Standard of Review*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted.) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) In determining whether the moving party met its burden, we review the record de novo. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].)

### II

### *The Workers' Compensation Exclusive Remedy Applies When an Employee's Injuries Arise Out of and in the Course of Employment*

### A

### *General Overview of Law*

Subject to statutory exceptions not applicable here, an injured employee's sole and exclusive remedy against his or her employer is the right to recover workers' compensation benefits, provided "the conditions of compensation set forth in Section 3600 concur." (§ 3602, subd. (a).) Section 3600, subdivision (a), provides in part: "Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees *arising out of* and *in the course of* employment . . . ." (§ 3600, subd. (a), italics added.) "In all cases where the conditions of compensation set forth in Section 3600 do not concur, the liability of the employer shall be the same as if this division had not been enacted." (§ 3602, subd. (c).)

"[T]he legal theory supporting . . . [the workers' compensation] exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure

or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.] The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' " (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054].)

■ The two-pronged requirement in section 3600—arising out of and in the course of employment—"is the cornerstone of the workers' compensation system." (*Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 732–733 [190 Cal.Rptr. 904, 661 P.2d 1058] (*Maher*).) In applying these requirements, we liberally construe the workers' compensation laws, "with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202; see *Maher, supra*, at p. 733.)

■ The rule of liberal construction "governs all aspects of workers' compensation." (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150].) It applies to "factual as well as statutory construction. [Citations.] Thus, '[i]f a provision in [the workers' compensation laws] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible.' [Citation.] The rule of liberal construction 'is not altered because a plaintiff believes that [he or she] can establish negligence on the part of [his or her] employer and brings a civil suit for damages.' [Citation.] It requires that we liberally construe the [laws] 'in favor of *awarding* work[ers'] *compensation*, not in permitting civil litigation. [Citation.]' [Citations.]" (*Ibid.*)

## B

### Course of Employment

Course of employment, for purposes of section 3600, subdivision (a), refers to the time, place and circumstances attending the injury.[2] (See, e.g., *LaTourette v. Workers' Comp. Appeals Bd., supra*, 17 Cal.4th at p. 651; *Argonaut Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 676–677 [55 Cal.Rptr. 810]; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 643, 652 [184 Cal.Rptr. 111].) An employee is in the course of employment when the employee does those reasonable things that his or her employment contract expressly or impliedly

[2] We follow courts that routinely analyze the course of employment requirement in section 3600 before the question of whether the injury arises out of the employment, even though subdivision (a) of that section lists the latter requirement first. (See *LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 651 [72 Cal.Rptr.2d 217, 951 P.2d 1184]; *Maher, supra*, 33 Cal.3d at p. 733.)

permits the employee to do. (*Maher, supra,* 33 Cal.3d at p. 733; *State Comp. Ins. Fund v. Indus. Acc. Com.* (1924) 194 Cal. 28, 33 [227 P. 168].)

When an employee is injured while *living* on the employer's premises, the course of employment requirement in section 3600, subdivision (a), is satisfied if the employment contract of the employee contemplates, or the work necessity requires, the employee to reside on the employer's premises. (*Aubin v. Kaiser Steel Corp.* (1960) 185 Cal.App.2d 658, 661 [8 Cal.Rptr. 497] (*Aubin*).) This rule is known as the bunkhouse rule.

The bunkhouse rule is an extension of the general rule that, where an employee is injured while on the employer's premises as contemplated by the employment contract or the necessity of work, the employee will be compensated.[3] (*Rosen v. Industrial Acc. Com.* (1966) 239 Cal.App.2d 748, 750 [49 Cal.Rptr. 706] (*Rosen*); *Aubin, supra,* 185 Cal.App.2d at p. 661.) One rationale behind the bunkhouse rule is an employee's reasonable use of the employer's premises constitutes a portion of the employee's compensation. (See, e.g., *Truck Ins. Exchange v. Ind. Acc. Com.* (1946) 27 Cal.2d 813, 819 [167 P.2d 705]; *Aubin, supra,* at p. 661.)

Although "invocation of the bunkhouse rule establishes that the injury occurred in the course of the employment[,] . . . there also must be some connection between the employment and the injury, or an injury arising out of the reasonable use of the premises, or the bunkhouse must place the employee in a peculiar danger." (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 133 Cal.App.3d at p. 653, fns. omitted.) Thus, an injury sustained by an employee in a "bunkhouse" is not per se compensable. (*Ibid.*; see also *Crawford v. Workers' Comp. Appeals Bd.* (1986) 185 Cal.App.3d 1265, 1268 [230 Cal.Rptr. 425] [the requirements in § 3600, subd. (a), "are stated conjunctively and both must be satisfied for an injury to be compensable"].) To be compensable under the bunkhouse rule, there also must be a causal connection between the injury and the employment. (*Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra,* 247 Cal.App.2d at pp. 677–678; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 133 Cal.App.3d at p. 653.)

---

[3] The judicially created bunkhouse rule is nothing more than a specific application of the arising out of and in the course of employment statutory requirements of section 3600, subdivision (a), which also encompasses the "growing out of and incidental to" and "acting within the course of" employment requirements of subdivision (a)(2), on the one hand, and the "proximate[] cause[]" requirement of subdivision (a)(3), on the other hand. (*Mason v. Lake Dolores Group* (2004) 117 Cal.App.4th 822, 833–834 [11 Cal.Rptr.3d 914] [§ 3600, subd. (a)(2), "essentially restat[es] the 'arising out of' and 'in the course of' requirements of section 3600, subdivision (a)"]; *Maher, supra,* 33 Cal.3d at p. 734, fn. 3 [the proximate cause requirement of § 3600, subd. (a)(3), "merely elaborat[es] on the general requirement that the injury arise out of the employment" in § 3600, subd. (a)].)

An employee residing on the employer's premises will be found to be acting within the course of employment, for purposes of section 3600, subdivision (a), when the employee's contract contemplates, *or* the nature of the employee's work mandates, the employee reside on the employer's premises. (See *Aubin, supra,* 185 Cal.App.2d at p. 662.)

Here, at the time of his accident, Marck was acting within the course of employment within the meaning of section 3600, subdivision (a). The State offered Marck residence in the State-owned ranch house as incentive to accept the new resource ranger position in the District. Marck understood the ranch house was offered to him as an "employment benefit." Marck initially declined the State's offer to relocate and take the new position because the State offered him the smaller of the two homes. The parties thus specifically negotiated over the issue of Marck's residence in the District, which the State offered the Vaughts as part of Marck's compensation package. The fact Marck was not a new employee with the State, but rather was merely changing positions in that employment, does not affect our conclusion Marck sustained injuries in the course of his employment with the State.

We further conclude Marck resided in the ranch house out of work necessity, which provides an independent basis to satisfy the course of employment requirement. As a park ranger, Marck was required to be "on call all the time." Marck also was required to patrol within the District. Because of the location of the ranch house in connection with his work, Marck and the State agreed Marck "would report to Borrego Springs to the district office," but he "could work out of the house at Vallecito."

Marck also used a portion of the ranch house as his office, where he stored equipment, topographical and park maps, and various items he used on patrol, for fire protection, and search and rescue in connection with his job. Although Marck was not compelled to live in the ranch house, the nature of his work as a resource ranger necessitated that he live there.

The Vaughts contend the bunkhouse rule does not apply because the ranch house was no longer the premises of the State as a result of the creation of a landlord-tenant relationship between them. In support of this contention, the Vaughts rely on *Rosen, supra,* 239 Cal.App.2d 748. In *Rosen,* several months after the plaintiffs moved into an apartment building owned by the defendant, the parties agreed to a rent reduction for the plaintiffs in exchange for the performance by the plaintiffs of certain nominal services on the defendant's premises. While on personal business on the defendant's premises, the plaintiff tenant fell and was injured.

In reversing the order awarding workers' compensation benefits to the plaintiff, the court held the bunkhouse rule did not apply to the situation when

a tenant performs nominal duties for the tenant's landlord in exchange for a credit allowance on an apartment rental. (*Rosen, supra,* 239 Cal.App.2d at pp. 750–751.) The court reasoned the "basic relationship" between the parties in that situation was that of landlord and tenant, unlike the bunkhouse cases where the landlord-tenant relationship was "entirely subsidiary and collateral to the basic employment relationship." (*Id.* at p. 750, fn. omitted.)

Unlike the tenant in *Rosen* who agreed several months after moving into the defendant's apartment building to perform nominal services for the defendant landlord, here the landlord-tenant relationship between the State and the Vaughts was collateral to the basic employment relationship between Marck and the State, which had begun in 1981. The evidence showed the State offered Marck residence in the ranch house *because* of Marck's employment with the State as a park ranger, as a benefit and out of work necessity, and *not* because the State sought to enter into a landlord-tenant relationship with the Vaughts.

The bunkhouse rule applies here despite the fact the Vaughts paid rent to the State to live in the ranch house.[4] To hold otherwise, as the Vaughts suggest, would effectively eliminate the bunkhouse rule, inasmuch as the rule presupposes the existence of a dual relationship between parties based on the parties' basic employment relationship *and* collateral landlord-tenant relationship. (*Rosen, supra,* 239 Cal.App.2d at pp. 750–751; *Aubin, supra,* 185 Cal.App.2d 658.)

■ The Vaughts also argue the bunkhouse rule does not apply to them because Marck was not compelled by the State to live in the ranch house, but instead could have elected to live in nonemployer housing. Although there was some support for this proposition in the early bunkhouse cases (see, e.g., *Larson v. Industrial Acc. Com.* (1924) 193 Cal. 406 [224 P. 744]; *Associated Oil Co. v. Industrial Acc. Com.* (1923) 191 Cal. 557 [217 P. 744]), courts since have repeatedly rejected such a narrow interpretation of the bunkhouse rule. (See, e.g., *Truck Ins. Exchange v. Ind. Acc. Com., supra,* 27 Cal.2d at pp. 816–817; *State Comp. Ins. Fund v. Indus. Acc. Com., supra,* 194 Cal. at p. 32; *Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra,* 247 Cal.App.2d at pp. 676–677; *Aubin, supra,* 185 Cal.App.2d at p. 662.) We agree with the modern trend of cases and conclude whether the bunkhouse rule applies depends not on whether the employee had a choice to live on the premises of the employer, but rather, whether the employment agreement contemplates, or the nature of the employee's work necessitates, the employee live on the premises.

---

[4] The record here is silent regarding the amount of rent paid by the Vaughts to live in the ranch house.

## C

### *Arising Out of Employment*

Additionally, "the statute requires that an injury 'arise out of' the employment. . . . It has long been settled that for an injury to 'arise out of the employment' it must 'occur by reason of a condition or incident of [the] employment . . . .' " (*Maher, supra,* 33 Cal.3d at p. 733; see *Employers etc. Ins. Co. v. Ind. Acc. Com.* (1953) 41 Cal.2d 676, 679 [263 P.2d 4].) "That is, the employment and the injury must be linked in some causal fashion" to satisfy the arising out of requirement. (*Maher, supra,* at p. 734; see *Atascadero Unified School Dist. v. Workers' Comp. Appeals Bd.* (2002) 98 Cal.App.4th 880, 883 [120 Cal.Rptr.2d 239].) "However, '[i]f we look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributory cause.' " (*Maher, supra,* 33 Cal.3d at p. 734; see *Employers etc. Ins. Co. v. Ind. Acc. Com., supra,* at p. 680.)

Generally, whether an injury of an employee arises out of and in the course of employment is a question of fact to be determined in light of all the circumstances of the particular case. (*Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346, 353 [115 Cal.Rptr.2d 503].) But where the facts relied upon are undisputed, as here, the resolution of that question becomes a matter of law. (*Ibid.*)

 The Vaughts contend Marck's injuries did not arise out of his employment as a matter of law because he was injured on his personal day off, while engaged in an activity having nothing to do with his employment as a park ranger. However, unless the cause of injury is so remote that it cannot be deemed incidental to, and thus arising out of, the employment, an injury occurring in employer-furnished housing in the course of employment ordinarily arises out of employment. (*Madin v. Industrial Acc. Com.* (1956) 46 Cal.2d 90, 92–93 [292 P.2d 892]; *Union Oil Co. v. Industrial Acc. Com.* (1931) 211 Cal. 398 [295 P.513]; *State Comp. Ins. Fund v. Indus. Acc. Com., supra,* 194 Cal. 28; *Larson v. Industrial Acc. Com., supra,* 193 Cal. 406; *Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra,* 247 Cal.App.2d 669; *Aubin, supra,* 185 Cal.App.2d 658; but see *Leffler v. Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 739 [177 Cal.Rptr. 552].)

 We conclude the award of compensation under the bunkhouse rule does not turn on whether the employee is injured on his or her day off, or after work, or while engaged in a purely personal activity, as the Vaughts contend, as long as there is some causal connection between the employment and the injury, and the injury is sustained in the course of employment. These

requirements are satisfied here, inasmuch as Marck's employment contributed to his injury, which he sustained while residing on his employer's premises while engaged in an activity that is incidental to his employment with the State. Because Marck's action against the State is barred by the workers' compensation exclusivity rule set out in section 3602, and because Maria's claim of loss of consortium is derivative of Marck's claim, the trial court properly granted summary judgment.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

McIntyre, J., and O'Rourke, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 20, 2008, S160053.